## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CRAIG BLACK,

                       Plaintiff,

         v.

CITY OF WILMINGTON and JOHN
LOONEY in his individual and official
capacity as Fire Department Chief,

                Defendants.

Civil Action No. 22-789-GBW

---

Michele D. Allen; ALLEN & ASSOCIATES, Wilmington, Delaware.

    *Counsel for Plaintiff*

Adam N. Saravay, Daniel J. Brown, Hayley J. Reese, Chelsea A. Bosch; McCARTER &
ENGLISH, LLP; Newark, NJ, Wilmington, Delaware.

    *Counsel for Defendants*

## MEMORANDUM OPINION

December 15, 2023
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Presently before this Court is Defendants City of Wilmington (the "City") and John Looney ("Chief Looney") (collectively, "Defendants'") Motion to Dismiss, D.I. 14, Counts I-III of Plaintiff Craig Black's ("Plaintiff" or "Black") Amended Complaint, D.I. 10, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' Motion is Granted-in-Part and Denied-in-Part.

## I.   BACKGROUND

Plaintiff Black is a Lieutenant firefighter with Defendant City's Fire Department and has worked with the Fire Department for over twenty years. D.I. 10 ¶¶ 2, 20. Black alleges that, during this time, he "has received high employment evaluations and countless commendations." *Id.* Yet, despite his considerable experience, Black contends that Defendants discriminated and retaliated against him on the basis of his African American race during a promotional process for selecting Captains that began in 2020. D.I. 16 at 2-3.

According to Black, the City's Fire Department has a procedural process for selecting employees to promote to Captain. D.I. 10 ¶ 21. This promotional process begins by testing any firefighters who apply for a promotion and placing the applicants into different promotional bands based on their scores. *Id.* at ¶ 22. The highest band, according to Black, is Band One and, upon a vacancy for Captain, the Chief of Fire selects a firefighter to promote from the Band One candidates list. *Id.* at ¶ 23. If the Band One list is exhausted, the Chief of Fire typically would select a firefighter to promote to Captain from the Band Two promotional list. D.I 16 at 2.

Black contends that he tested to be part of a promotional band list in or around April 2020. D.I. 10 ¶¶ 23-24. Shortly after, in July 2020, Black was selected with eight other Lieutenant-level firefighters as part of Band One. *Id.* at ¶ 25. Of the nine Band One firefighters, Black was the only African American. *Id.* at ¶ 26. However, according to Black, almost immediately following his placement on the Band One list, he began to face workplace discrimination. *Id.* at ¶ 27. Specifically, Black alleges that he was brought up on "fictitious charges regarding miscommunication of a notification of Sick Leave in September of 2020." *Id.* Then, from November 2020 through July 2021, Black alleges that five vacant promotional Captain positions became available and, while he was eligible for each, Defendants filled the vacant positions with five of the eight Caucasian males in Band One. *Id.* at ¶¶ 28-30. For instance, Black alleges that, in or around November and December 2020, the then-Fire Chief Michael Donahue selected Jacob Morente, Andrew Cavanaugh, and Griffith Jordan, all Caucasian males with several less years of experience and tenure than Black, to fill the vacant Captain positions. *Id.* at ¶¶ 31-33. Black contends that he has more experience and qualifications than each Morente, Cavanaugh, and Jordan. *Id.* at ¶ 37.

On April 28, 2021, after three of the five promotion decisions were made, Black filed a Charge of Discrimination alleging race discrimination and retaliation with the Delaware Department of Labor ("DDOL") which was dual filed with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶ 10. Shortly after he filed the Charge of Discrimination, Defendant Fire Chief Looney, who was appointed as the new Fire Chief on May 13, 2023, selected Matthew Marsella and Jason Strecker, both Caucasian males with nine years and eighteen years of experience as firefighters, respectively, for the last two of the five vacant positions. *Id.* at ¶¶ 35-

3

36. Like the prior three Lieutenants to be promoted, Black had more experience than both Marsella and Strecker. *Id.* at ¶ 37.

Black alleges that he continued to face retaliatory treatment when, on June 14, 2022, Defendant Looney dispersed General Order 2022-15 which held that promotions to positions of Captain would be made from Band One only. *Id.* at ¶¶ 38-39. Significantly, on the same day, Black alleges that Defendant Looney released the 2022 promotional list, which now listed Black in Band Two despite his previous Band One placement. *Id.* at ¶40. Black alleges that he was demoted to Band Two "in retaliation for reporting race discrimination and for filing a Charge of Discrimination against" the City. D.I. 16 at 3-4.

On June 14, 2022, Black filed an action in this Court alleging violations of Title VII of the Civil Rights Act of 1964. D.I. 1. Black filed an amended complaint on November 21, 2022 (hereinafter, the "Amended Complaint") raising three causes of action. D.I. 10. Under the first two counts, which are brought only against the City of Wilmington, the City is accused of: (1) race discrimination under Title VII and (2) retaliation under Title VII. *Id.* at 6-7. The final count of the Amended Complaint asserts a *Monell* claim under § 1983 against both the City and Chief Looney in his individual and official capacity. *Id.* at 8-9.

## II.   LEGAL STANDARD

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "'disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements.'" *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

Critically, on a motion to dismiss, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)), *aff'd*, 2018 WL 11446482 (3d Cir. Apr. 6, 2018). Rule 12(b)(6) requires the court to accept all factual allegations in the complaint as true and view them in the light most favorable to plaintiff. *Id.* The court may consider matters of public record and documents attached to, "integral to[,] or explicitly relied upon in" the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (cleaned up); *see also Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738, 739 (3d Cir. 2020) (same). "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420).

## III.   DISCUSSION

Defendants move to dismiss each of the three claims asserted by Black under Fed. R. Civ. P. 12(b)(6). D.I. 15 at 1. As discussed in more detail below, the Court denies Defendant's Motion to Dismiss Counts I and II of the Amended Complaint. Further, while the Court grants Defendants'

Motion to Dismiss Count III as it applies to Defendant Looney, Defendant's Motion to Dismiss Count III against Defendant City is denied.

As a threshold matter, the Court must address whether it will review or consider the additional information, including numerous exhibits and facts, cited by Defendants in support of their Motion to Dismiss. For a court ruling on a motion to dismiss to consider matters outside the pleadings, it must treat the motion as one seeking summary judgment under Rule 56. Fed. R. Civ. P. 12(d). The Court has the discretion, however, to ignore the matters presented outside the pleadings and continue to treat the filing as a motion to dismiss. *Kulwicki v. Dawsom, 969 F.2d 1454, 1462* (3d Cir. 1992). Courts generally decline to convert a motion to dismiss into a summary judgment motion when, as is the case here, there has been little or no discovery. *Brennan v. Nat'l Tel. Directory Corp.*, 850 F. Supp. 331, 335 (E.D. Pa. 1994). In such circumstances, considering the motion to dismiss as a motion for summary judgment would be unfair to the opposing party who may lack the opportunity to properly present its argument without the benefit of a fully developed factual record. *Id.* As no discovery has taken place in this matter, the Court believes that Defendants' Motion to Dismiss for failure to state a claim should not be converted into a summary judgment motion; thus, the Court will not consider any new materials or information cited by Defendants in resolving this Motion.

### A. Plaintiff Has Pled Sufficient Facts to Support a Title VII Claim for Discriminatory Failure to Promote.

To plead a *prima facie* case of race discrimination based on a failure to promote under Title VII, a plaintiff must establish that: "(1) he is a member of a protected class; (2) he was qualified for the position he sought to attain or retain; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional

6

discrimination." *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir.2001). "[F]or purposes of pleading sufficiency," the complaint need not establish each element of a *prima facie* case in order to survive a motion to dismiss. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016) (footnote omitted). Rather, the post-*Twombly* pleading standard, "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Id.* (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)) (alteration original). The Amended Complaint satisfies this standard.

In his Amended Complaint, Black contends that he was the only African American firefighter placed on the Band One promotional list in July 2020, thus establishing that he was a member of a protected racial class and was qualified for a promotion to Captain. *See* D.I. 10 ¶¶ 25-26. Additionally, the Amended Complaint alleges that Black suffered an adverse employment action when the City promoted five less qualified Caucasian employees from Band One to fill Captain vacant positions. *Id.* at ¶¶ 30, 54-55. Thus, the first three conditions of a Title VII claim are sufficiently pled, and the Court need only determine whether the Amended Complaint contains sufficient factual evidence to support a reasonable inference that Black suffered an adverse employment action due to his race.

Plaintiffs bringing Title VII claims commonly plead a reasonable inference of discrimination by raising allegations that "similarly situated persons not within the protected class," known as comparators, "were treated more favorably." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 n. 7 (3d Cir.2003). While a plaintiff's comparators need not be "identically situated" to plaintiff, they "must nevertheless be similar in all relevant respects." *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 222–23 (3d Cir. 2009) (citation omitted). Thus, where, as here, plaintiff alleges workplace discrimination, relevant factors for determining whether a plaintiff is similarly

situated to his alleged comparators include, but are not limited to, "whether the comparators '1) had the same job description, 2) were subject to the same standards, 3) were subject to the same supervisor, and 4) had comparable experience, education, and other qualifications.'" *Taylor-Bray v. Delaware Dep't of Servs. for Child., Youth & their Fams.*, 627 F. App'x 79, 83 (3d Cir. 2015) (citing *Salas v. Wisconsin Dep't of Corrections*, 493 F.3d 913, 923 (7th Cir.2007)).

Here, Black identifies five Caucasian firefighters that he believes are sufficient comparators to himself. D.I. 10 ¶¶31-36. According to Black, each of the five comparators were placed on the Band One eligibility list alongside Black in 2020. *Id.* Also like Black, each of the five men held the same rank of Lieutenants prior to their promotions. D.I. 16 at 7. Yet, Black contends that the five Caucasian firefighters were treated more favorably when they were selected over Black to fill vacant Captain positions. *Id.* at 7-8. Black notes that the men were promoted despite being less qualified and having fewer overall years of experience as firefighters. *Id.* at 3. According to Black, "[t]he mere fact that Plaintiff was the only African American out of eight eligible candidates and Defendants promoted five less qualified Caucasian males to the position of Captain alone" creates a reasonable inference of discrimination that is sufficient to survive dismissal. *Id.* at 6.

Defendants, on the other hand, contend that Black's claim should be dismissed because Black is not similarly situated to his identified comparators. D.I. 15 at 8. In support of their argument, Defendants cite *Verdu v. Trustees of Princeton University*, where the Third Circuit affirmed a Rule 12(b)(6) dismissal of a Title VII claim brought by a male professor against his employer claiming that plaintiff received disparate treatment due to his sex after he was investigated and terminated for violations of the employer's sexual-misconduct policy. *Id.* at 9; *Verdu*, 2022 WL 4482457, at 2-3. Plaintiff in *Verdu* alleged that he received different treatment

8

by his employer than a similarly situated female, and the Third Circuit held that plaintiff did not allege "enough commonalities" with his alleged comparators to survive dismissal. *Verdu*, 2022 WL 4482457, at 5. In granting the defendant's motion to dismiss, the Third Circuit in *Verdu* noted that plaintiff "never identifies a female professor at Princeton as a comparator" but instead, alleged that female *graduate students* were valid comparators. *Id.* The Third Circuit held that "[plaintiff], a professor, and [] a [female] graduate student, hold unquestionably different roles and levels of authority" and thus were not sufficiently alike to create a reasonable inference of discrimination to survive dismissal. *Id.* Similarly, in *Wilcher v. Postmaster General*, the Third Circuit dismissed plaintiff's Title VII discrimination claim after finding that the seven employees identified by plaintiff were not comparators since, among other things, "none of them held the same position as [plaintiff]." 441 F. App'x 879, 882 (3d Cir. 2011). The court in *Wilcher* also recognized that plaintiff's alleged comparators were of multiple races and both genders, which according to the court, "does not support a claim that race and gender were motivating or determinative factors in the adverse employment actions." *Id.* Here, unlike *Verdu* and *Wilcher*, the five comparators identified by Black held identical positions to Black. D.I. 16 at 7. Additionally, as each of the comparators were Caucasian men, the comparators were similarly situated to each other such that their promotion over Black supports Black's argument that race was a determinative factor in Defendants' promotion decisions. Thus, *Verdu* and *Wilcher* are wholly distinguishable from this matter.

Defendants additionally contend that the five Caucasian firefighters identified by Black are not valid comparators because Black does not allege in his complaint that any of the men were subject to the same or similar disciplinary actions as him. D.I. 15 at 9-10. This argument fails, however, because Black is not accusing the City of applying its disciplinary standards in a

discriminatory fashion. Thus, this case is distinguishable from the cases cited by Defendants where employees brought Title VII actions directly challenging disciplinary actions taken by their employers under claims that the employers responded to employee misconduct in a discriminatory manner. For instance, in *Braddock*, plaintiff claimed that defendant, his employer, "failed to discipline Caucasian employees for insubordination while disciplining plaintiff for similar conduct." *Braddock v. SEPTA*, 2014 WL 6698306, at 1 (E.D. Pa. Nov. 25, 2014). In his complaint, plaintiff identified three of defendant's Caucasian employees, who, like plaintiff, were insubordinate to a supervisor and yet, unlike plaintiff, faced no disciplinary actions for their conduct. *Id.* at 4. As to one of the three comparators, the court found that plaintiff failed to plead that the comparator was similarly situated to plaintiff because, among other things, plaintiff did not allege any facts related to the circumstances of the comparator's alleged subordinate misconduct.[1] *Id.* Because plaintiff in *Braddock* was alleging that "defendants unlawfully discriminated against him when they discharged him for insubordination but failed to discipline the insubordinate acts of similarly situated Caucasian [] employees," evidence that the comparators had engaged in similar acts of insubordination as plaintiff was central to his allegations. *See id.* As the court noted, "without similarly situated comparators, the court could not infer that the employer's disciplinary rules and policies were being applied in a discriminatory manner. *Id.*[2]

---

[1]    Notably, the court considered other factors beyond the similarity between plaintiff's misconduct and the misconduct of his comparators. For instance, as to the remaining two comparators, the court held that they too were not similarly situated to plaintiff because they did not share the same supervisor as plaintiff. *Id.*

[2]    See also *Cooper v. Templeton*, 629 F. Supp. 3d 223, 231 (S.D.N.Y. 2022), where plaintiff was challenging her employer's alleged double standard regarding their discipline of male v. female employees. The court in *Cooper* dismissed plaintiff's claim after finding, among other things, that plaintiff failed to allege that the male comparators she identified, each of whom plaintiff alleged had misbehaved yet had not faced the same scrutiny as plaintiff, had engaged in comparable misconduct to plaintiff. *Id.* Similarly, in *Moultrie v. NYS Dep't of Corr. & Cmty.*

Here, however, the relevant discriminatory actions alleged by Black relate to the City's promotion of its Lieutenant Firefighters to Captain. D.I. 16 at 2 ("Defendants discriminated and retaliated against Plaintiff on the basis of his African American race during the 2020 Captain's promotional process."). In determining whether an inference of intentional discrimination can be drawn, the Court must find evidence that the City adopted promotional policies or practices that were discriminatory. As part of this analysis, the Court must determine whether Black was similarly situated to his identified comparators, and the Court's inquiry should consider factors like title, grade level, responsibilities, duties, and performance. *Orji v. City of Philadelphia*, No. 12-CV-0001, 2013 WL 3283463, at 6 (E.D. Pa. June 27, 2013); *see also Andujar v. Gen. Nutrition Corp.*, 767 F. App'x 238, 241 (3d Cir. 2019) (internal citations omitted ("[S]imilarly situated in the promotion context means those persons possessing equivalent qualifications and working in the same job category as plaintiff."). The Court will also consider whether Black "was actually considered by [the City] for the promotion[] at the same time it considered [the comparators]." *Orji*, 2013 WL 3283463, at 6. Black's *prima facie* burden, however, is not high. *Id.* at 7. As each of the five comparators identified by Black were members of Band One at the same time as him and held the same title as Lieutenants, Black has pled sufficient facts that he and the five comparators are similarly situated to meet this burden. *See Ezold v. Wolf, Block, Shorr, and Solis–Cohen*, 983 F.2d 509, 523 (3d Cir.1992) (recognizing that a plaintiff makes a *prima facie* showing

---

*Supervision*, 2015 WL 2151827(S.D.N.Y. May 7, 2015), plaintiff was terminated for violating defendant's employee manual and alleged that her termination was "motivated by gender because male employees who engaged in purportedly similar conduct received more favorable treatment." *Id.* at 2. Finally, as Defendants highlight, the plaintiff in *Verdu*, "was found to have violated university policy," D.I. 19 at 4, and he brought a Title VII action against his employer alleging that the policy was applied unfairly against him due to his gender. *Verdu*, 2022 WL 4482457, at 5.

that he was among those qualified for a position if he was among those from a selection for promotion was made).

Additionally, while the Court agrees with Defendants that "performance issues are [not] irrelevant" to the Court's analysis of similarities between Black and his comparators, D.I. 19 at 5, the Court does not believe that the absence of such evidence is determinative where, as here, the Title VII claim does not challenge the disciplinary action itself. That is, evidence that the five comparators were subject to disciplinary actions may be relevant in determining whether Black and his alleged comparators are similarly situated; however, that evidence is not critical given that, at this stage of the pleadings, the Court does not require Black to establish that he and the five comparators are identical in every respect.[3] As Black has pled sufficient facts that his comparators are similar to him in several critical respects, including Band One status, Lieutenant Rank, and eligibility for promotion, the Court finds that Black has pled sufficient facts to avoid dismissal.[4] Additionally, while Defendants stress that Black was found guilty of a disciplinary action in an attempt to further distinguish him from the five comparators, D.I. 15 at 10, the Court notes again that it cannot consider new evidence that was not alleged in Black's pleadings, including the status of his disciplinary action and the disciplinary records of the five comparators. *See supra* Part III.

---

[3]     *Boyer v. City of Philadelphia*, 2018 WL 4252378, at *7 (E.D. Pa. Sept. 6, 2018) ("A similarly situated analysis is a fact intensive inquiry. Courts must look to the circumstances of the case before them instead of rote application of an inflexible test. . . . Which factors are relevant is determined by the context of each case . . . .").

[4]     Defendants similarly argue that Black's allegations that the disciplinary charges were "fictitious" are conclusory and thus should be ignored. D.I. 19 at 3-4. Again, given that Black has presented strong evidence of similarities in rank and title, the Court finds that Black's claims alleging "fictitious" disciplinary charges—at this stage— are collateral to resolving Defendants' Motion to Dismiss.

Considering the facts only as they are pled in the Amended Complaint and viewing those facts in the light most favorable to Black, the Court finds that Plaintiff's Amended Complaint contains sufficient factual allegations from which discrimination can be inferred. Thus, Defendants' Motion to Dismiss Black's discriminatory promotion claim under Title VII is denied.

### B. Plaintiff Has Pled Sufficient Facts to Support a Title VII Retaliation Claim.

Title VII additionally prohibits employers from retaliating against "any individual ... because he has opposed any . . . unlawful employment practice" under Title VII. 42 U.S.C. § 2000e–3(a). The crux of a retaliation claim rests on whether a plaintiff can show "there was a causal connection between the employee's participation in [a] protected activity and the adverse employment action." *Blakney v. City of Philadelphia*, 559 Fed.Appx. 183, 185 (3d Cir.2014) (unpublished) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir.2006)). When such a claim is based on race, a plaintiff must allege that: (1) he engaged in an activity protected by Title VII; (2) adverse action was taken by the employer against him; and (3) a causal connection between the protected activity and the employer's adverse action. *See Runion v. Equip. Trans., LLC*, 2017 WL, at *3 (M.D. Pa. 2017) (citing *Theriault v. Dollar General*, 366 Fed. App'x 172, 174 (3d Cir. 2009)). In considering a motion to dismiss, the Court must accept the facts in the Amended Complaint as true and take them in the light most favorable to Plaintiff. Here, Black has pled sufficient facts to state a plausible claim for relief under Title VII.

First, it is undisputed that Black engaged in a protected activity when he reported race discrimination in his Charge of Discrimination with the DDOL and EEOC on April 28, 2021. *See Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 287–88 (3d Cir. 2001) ("Protected activities include filing charges of discrimination or complaints about discriminatory

employment practices."). Additionally, Black alleges that he suffered "several adverse employment actions in retaliation" including, not being selected for a promotion to Captain on several occasions and ultimately being placed on the Band Two promotional list in June 2022. D.I. 16 at 10. Accepting these allegations as true, the Court finds that the Amended Complaint sufficiently pleads the first two conditions of a Title VII retaliation claim.

The parties dispute whether Black has pled sufficient evidence to show causation to support his Title VII retaliation claim. D.I. 15 at 11; D.I. 16 at 10. "To establish the requisite causal connection, Plaintiff must allege facts to demonstrate either: '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" *Frazer v. Temple Univ.*, 25 F. Supp. 3d 598, 615 (E.D. Pa. 2014) (quoting *Cooper v. Menges*, 541 F. App'x 228, 232 (3d Cir. 2013)). Moreover, a plaintiff must allege "facts showing 'actual antagonistic conduct or animus' in 'the intervening period,' between the protected activity and the retaliation." *Id.* at 616. Finally, evidence of causation may be "gleaned from the record as a whole." *Vaticano v. Twp. of Edison*, 514 Fed. App'x 218, 225 (3d Cir. 2013) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

Defendants argue that Black has not pled sufficient evidence of causation. D.I. 15 at 11. In support of this argument, Defendants cite three instances of retaliation alleged by Black: "(1) on May 13, 2021, Chief Looney did not select Plaintiff for an open Captain position []; (2) on July 1, 2021, Chief Looney did not select Plaintiff for an open Captain position []; and (3) on June 14, 2022, Chief Looney issued General Order 2022-15, which contained the 2022 promotional list, and Plaintiff was listed in Band Two." *Id.* at 11-12. Defendants contend that causation is missing as to the May 13, 2021 retaliation claim because Black "does not plead any

14

fact that would show that Chief Looney was aware of the First Charge when he made the first allegedly retaliatory decision on May 13." *Id.* at 12. According to Defendants, the second and third retaliatory events fail because they occurred too long after the First Charge to infer retaliation. *Id.* Specifically, Defendants argue that "[t]he July 1, 2021, promotion occurred more than two months after Plaintiff filed the First Charge, and the June 14, 2022 promotional list was issued more than 13 months after the First Charge." *Id.*

Defendants' arguments fail, however, because Defendants consider each retaliatory act as an isolated wrong. Yet, "the proffered evidence, looked at as a whole, may suffice to raise the inference" of a causal connection. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997); *see also Daniels v. Sch. Dist. Of Phila.*, 776 F.3d 181, 193 (3d Cir. 2016) (finding that "... a gap of three months between the protected activity and the adverse action, *without more*, cannot create an inference of causation."). Here, Black has alleged numerous acts of retaliation by Defendants over a thirteen-month timeframe, which include denying Black promotions to the rank of Captain on several occasions; dispersing General Order 2022-15 that altered the City's procedures for promotions by requiring that promotions to Captain be made only from Band One; and ultimately demoting Black to Band Two despite the fact he was previously placed on Band One. D.I. 10 ¶¶ 34-40. As the Third Circuit has recognized, such a "pattern of antagonism" by the employer could link the adverse action with Plaintiff's complaint even where temporal proximity alone is not unusually suggestive. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000).

Accordingly, viewing the factual allegations from the pleadings in the light most favorable to Black, the Court finds that Black has pled sufficient facts to support an inference of

a pattern of retaliatory actions to show causation. Thus, Defendants' Motion to Dismiss Black's claim of Title VII retaliation is denied.

### C. Plaintiff Has Sufficiently Pled a § 1983 *Monell* Claim.

Generally, §1983 claims require proof: "(1) [of a] violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed or caused by a person amenable to suit under § 1983 and acting under color of state law." *Holley v. Port Auth. of N.Y. & N.J.*, No. 14-7534, 2018 WL 4953008, at *2 (D.N.J. Oct. 12, 2018) (internal citations omitted). Defendants argue that Black's § 1983 *Monell* claim fails because the Amended Complaint does not plead a constitutional violation and does not plead a policy, practice, or custom attributable to the City. D.I. 15 at 13-19. For the following reasons, the Court disagrees.

#### 1. The Amended Complaint sufficiently pleads a constitutional violation.

To establish liability under *Monell*, a plaintiff must first identify an underlying constitutional violation. *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992). Here, Black alleges that Defendants' actions violated his right to equal protection under the Fourteenth Amendment. D.I. 16 at 12. Thus, to bring such a § 1983 equal protection claim, Black must allege that (1) he is a member of a protected class and (2) he received different treatment than that received by other similarly situated individuals. *Keenan*, 983 F.2d at 465. Under Third Circuit precedent, "persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014).

The Amended Complaint contains factual allegations that Black is a member of a protected class and that he was treated differently than other similarly situated individuals outside of his

16

protected class. D.I. 10 at ¶¶ 31-36, 52. For the reasons discussed above, *see supra* Part III.A., the Court finds that Black's allegations in his Amended Complaint are sufficient to support his § 1983 claim for discrimination based upon the denial of his equal protection rights against the City. D.I. 16 at 13.

### 2.   *The Amended Complaint sufficiently pleads a policy, practice, or custom attributable to the City.*

In addition to identifying a constitutional complaint, a plaintiff raising a § 1983 *Monell* claim must identify a challenged policy or custom, attribute it to the municipality itself, and establish "a causal link" between the policy or custom and the constitutional injury alleged. *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). "There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 417 (1997) (Souter, J., dissenting). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Id.* Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003)

Under this third scenario, "[a] policy is established when a decisionmaker with final authority to create municipal policy issues an official proclamation, policy or edict." *Baldwin v. Gramiccioni*, 2017 WL 120643, at *7 (D.N.J. Jan. 11, 2017). Alternatively, Black can establish municipal liability based on a custom or practice, which is "a given course of conduct, although not specifically endorsed or authorized by law, [that] is so well-settled and permanent as virtually to constitute law." *Miller v. Corr. Med. Sys., Inc.*, 802 F.Supp. 1126, 1132 (D.Del.1992) (internal citation omitted). Relevant here, courts recognize, in some instances, that even the absence of a policy or a failure to affirmatively act may provide the basis for a § 1983 *Monell* claim if sufficiently pleaded. In *Natale v. Camden County Correctional Facility*, for instance, the Third Circuit determined that a prison with "no policy ensuring that an inmate having need for medication for a serious medical condition would be given that medication during the first 72 hours of incarceration" was a "particularly glaring omission in a program of medical care." *Natale*, 318 F.3d at 584–85. The court concluded that a jury could determine the absence of such a policy was "*sufficiently obvious to constitute deliberate indifference* to those inmates' medical needs," and thus the plaintiff's § 1983 *Monell* claim should have survived summary judgment. *Id.* at 585 (emphasis added).

Similarly, here, Black alleges that the City had a "policy or pattern of practice of not having a promotional criterion for the Fire Chief to follow when selecting a firefighter for an open Captain position." D.I. 16 at 13; D.I. 10 ¶ 71. Specifically, Black contends that "[t]here was a clear need for Chief Looney to act affirmatively and take corrective actions against the established practice of discrimination in the promotional process in order to act in accordance with [Black's] constitutional rights." D.I. 16 at 14. Yet, Black argues that Defendants failed to implement such a policy. *Id.* Thus, according to Black, "the inadequacy of any existing policy to deter this practice

resulted in the violation of Plaintiff's constitutional rights" and leads only to the reasonable conclusion that "Defendants were deliberately indifferent to Plaintiff's needs." *Id.*

Defendants challenge Black's allegations of a discriminatory policy, practice or custom on three grounds. D.I. 15 at 13-19. First, Defendants argue that Chief Looney is not a final policy maker with respect to disciplinary actions. *Id.* at 14. Yet, the Amended Complaint asserts that Chief Looney was the final decisionmaker with respect to decisions to promote individuals to Captain from the Band One candidates. D.I. 10 ¶ 73. According to Black, Chief Looney's decision is made by him alone and is unreviewable. D.I. 16 at 15. Accepting those allegations to be true, the Court finds that Black has adequately alleged that Chief Looney is a policymaker. *See Gelpi v. City of Philadelphia*, 183 F. Supp. 3d 684, 689 (E.D. Pa. 2016) (noting that a policymaker is an official with "final, unreviewable discretion to make a decision or take an action.").

Defendants additionally argue that the Amended Complaint fails to establish a policy, practice, or custom attributable to the City. D.I. 15 at 17. Specifically, Defendants contend that Black "alleges only his own personal experiences [and] fails to plead a larger policy, practice, or custom sufficient for a *Monell* claim." *Id.* The Court disagrees. Black alleges that Chief Looney and the City failed to implement rules and policies to deter practices of discrimination in the City's promotional process for its Fire Department. D.I. 16 at 15. As a result, Black contends that Chief Looney "promoted other Caucasian individuals who were not as experienced or qualified as Plaintiff." *Id.* While this claim focuses on "his own personal experiences," D.I. 15 at 17, Black's Amended Complaint further alleges that "Defendant City of Wilmington has not promoted an African American to the position of Captain in almost ten years, despite numerous opportunities."[5]

---

[5]     Defendants ask the Court to take notice of evidence that African American candidates were promoted to other positions. D.I. 19 at 2. This evidence is beyond the pleadings and, even

D.I. 10 ¶ 46.  At this stage of the action, the Court must accept Black's allegations as true and view those allegations in the light most favorable to him.  Having done so, the Court finds that Black has presented more than just his own personal experience and has alleged plausible facts to support his claim that the City engaged in a pattern of discrimination in their policies promoting firefighters to Captain.  Thus, the Court disagrees with Defendants' contention that Black "fail[ed] to plead a policy, practice, or custom attributable to the City."

Finally, Defendants argue that Black's "assertion that the City has a policy or procedure that allow[s] the Fire Chief to use race as a factor [] is wrong."  D.I. 15 at 18.  In support of this argument, Defendants cite the City of Wilmington Charter.  *Id.*  Yet, at this stage of the proceedings, the Court's analysis is limited to the pleadings.  *See supra* Part III.  Thus, the Court will not consider whether "[t]he City of Wilmington Charter specifically prohibits any City officer, such as the Fire Chief, from discriminat[ing] against any person because of race, color, [etc.] when exercising his powers or in the "performance of his duties."  *Id.*

Accordingly, the Court finds that Black has sufficiently pled a a valid § 1983 *Monell* claim against the City.  Thus, Defendants' Motion to Dismiss the claim against the City is denied.  Because Black does not oppose Defendants' Motion to Dismiss his § 1983 *Monell* claim against Chief Looney, the Court will grant the Motion only as it relates to the alleged § 1983 *Monell* claim against Chief Looney.  *See* D.I. 16 at 16.

---

if noticed, would not defeat Black's claim since Black does not allege that Defendants have never, as Defendants allege, promoted African American candidates to officer positions.  *See* D.I. 19 at 2.  Rather, Black alleges that Defendants have not promoted African American firefighters *to Captain*.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED-IN-PART and DENIED-IN-PART.  The Court will issue an Order consistent with this Memorandum Opinion.